IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CAROL L. PARKS, : CIVIL ACTION NO. **1:CV-08-1251**
:
   Plaintiff : (Judge Caldwell)
:
v. : (Magistrate Judge Blewitt)
:
MICHAEL J. ASTRUE, :
Commissioner of :
Social Security, :
:
   Defendant :

## **REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Carol L. Parks, is seeking review of the decision of the Commissioner of Social Security, ("Commissioner"), that denied her claim for Disability Insurance Benefits, ("DIB"), pursuant to Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

**I.    PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for DIB on July 17, 2006, alleging disability since July 1, 1997, due to anxiety and depression. (R. 11). Subsequently, the Plaintiff amended her alleged disability onset date to November 9, 2005. (R. 13). The state agency denied her claim initially and she filed a timely request for a hearing. (R. 11). A hearing was held before an Administrative Law Judge, ("ALJ"), on August 22, 2007. (R. 23-49). At the hearing, the Plaintiff, who was represented by counsel, and a vocational expert, ("VE"), testified. (R. 23-49). The Plaintiff was denied benefits pursuant to the ALJ's decision of September 21, 2007. (R. 11-20).

The Plaintiff requested review of the ALJ's decision. (R. 7). The Appeals Council denied her request on May 2, 2008, making the ALJ's decision the final decision of the Commissioner. (R. 2-4). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 9 & 12). The Plaintiff filed a reply brief on

January 26, 2009. (Doc. 13).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. §

404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (R. 11-20). At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful work activity since her amended alleged disability onset date, November 9, 2005. (R. 13). At step two, the ALJ concluded that the Plaintiff's panic disorder and depressive disorder were "severe" impairments within the meaning of the Regulations. (R. 13). At step three, the ALJ found that the Plaintiff does not have an impairment, or combination of impairments, severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (R. 14).

At step four, the ALJ found that the Plaintiff is unable to perform her past relevant work. (R. 18). At step five, the ALJ found that the Plaintiff has the residual functional capacity, ("RFC"), to perform a full range of work at all exertional levels, but with nonexertional limitations. (R. 15). Thus, the ALJ determined that the Plaintiff has not been under a disability, as defined in the Act, from November 9, 2005, her amended alleged disability onset date, through the date of the hearing decision. (R. 19-20).

## IV. BACKGROUND.

The Plaintiff was born on May 1, 1967. (R. 27). She was thirty-eight (38) years old on her amended alleged disability onset date and forty (40) years old at the time of the ALJ hearing. Therefore, she is considered a "younger person" under the Regulations. 20 C.F.R. §§ 404.1563 (c), 416.963(c).

Originally, the Plaintiff alleged a disability onset date of July 1, 1997. (R. 26). As the ALJ pointed out at the hearing, the Plaintiff engaged in substantial gainful work activity through 2005. (R. 26). The ALJ recommended that the Plaintiff amend her disability onset date to November 9, 2005, the day after she stopped working in 2005. (R. 26-27). The Plaintiff agreed and amended her disability onset date accordingly. (R. 27).

The Plaintiff attended high school until the 11th grade and did not obtain a G.E.D. (R. 28). The Plaintiff last worked in 2005 as a cashier. (R. 29). At the hearing, it was established that the Plaintiff was not alleging exertional limitations. (R. 27). The Plaintiff testified that she is able to take care of her own personal grooming, but that her mother does the household chores, cooking, cleaning and laundry. (R. 30). She does not have any hobbies and her mother or children do the shopping. (R. 31). The Plaintiff testified that she gets along with her immediate family and does not have problems interacting or getting along with people in authority. (R. 31). The Plaintiff's husband is in the Army, and when he is in Iraq, she lives with her mother, as well as her daughter and cousin. (R. 34). She cannot go out in public because she gets very nervous and thinks people are laughing or staring at her, which causes panic attacks. (R. 31-32). The Plaintiff smokes half a pack of cigarettes per day and on a bad day sleeps 19 hours out of a 24 hour day. (R. 32). On a good day, the Plaintiff will sleep 14 hours out of a 24 hour day. (R. 32).

The Plaintiff suffers from panic attacks. (R. 35). Crowds, anything negative, bad news and bad weather aggravate the Plaintiff's panic symptoms. (R. 34). When the Plaintiff has a panic attack, she gets rapid heart beat, hot all over, itching, and dizziness. (R. 34). She testified that she cannot leave her house without a paper bag or her medication because she will hyperventilate. (R. 34). The Plaintiff has a panic attack every day, and can have up to three a day. (R. 35). She currently takes Lexapro, Ativan, Seroquel, Lipitor, Prilosec, Tramadol and Toradol. (R. 33). The Plaintiff testified that the psychiatric medications do not relieve her symptoms and causes drowsiness and appetite problems. (R. 33). She takes Ativan, to calm herself, three times a day and needs to take an extra dose up to three times per week. (R. 35). The Plaintiff testified that the Ativan does not take away the anxiety, but calms her heart rate.

(R. 35). Other than taking medication, the Plaintiff does breathing exercises to control her panic symptoms. (R. 33-34).

Vocational expert, Ronald P. Sholtis, testified based on the *Dictionary of Occupational Titles*. (R. 43-49). In response to the ALJ's hypothetical question, the VE stated that such an individual would be able to perform work as a dishwasher, office cleaner, hand packager, and laundry worker. (R. 45-46).

## V. DISCUSSION.

### A. Whether the ALJ erred in finding that the Plaintiff's mental health impairments do not meet or equal Listings 12.04 and 12.06.

The Plaintiff argues that the ALJ erred in finding that she did not meet the severity requirements of listing 12.04(B) and 12.06(B). (Doc. 9 at 4-8). The Plaintiff contends that in making this determination, the ALJ "overstated the Plaintiff's functioning in activities of daily living, social functioning, and concentration, persistence and pace." (Doc. 9 at 4). The Plaintiff asserts that the record "clearly supports a finding that the Plaintiff experiences severe impairments in all of these areas, thus meeting or equaling the listings." (Doc. 9 at 4-5). The Defendant argues that the ALJ's determination that the Plaintiff's mental impairments caused, at most, moderate functional limitations was reasonable and supported by the record. (R. 12 at 9-10).

The Supreme Court has held that a claimant must prove that her condition meets every criteria in a Listing before she can be considered disabled *per se*. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is disabled *per se* under Listing 12.04 when she either satisfies the requirements of both 12.04(A) and 12.04(B), or both 12.06(A) and 12.06(B). The ALJ found that the Plaintiff is not *per se* disabled under listing 12.04 or 12.06. (TR. 14-15).

Listing 12.04(B) and 12.06(B) require that the symptoms described in (A) result in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

5

> 3. Marked difficulties in concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B), 12.06(B).

The ALJ noted that a marked limitation means more than moderate, but less than extreme and that repeated episodes of decompensation, each of extended duration, means 3 episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. (R. 14). The ALJ found that the Plaintiff's mental impairments did not satisfy the "paragraph B" criteria for 12.04 and 12.06. (R. 14). The ALJ found that the Plaintiff has no restrictions in activities of daily living and noted that she is able to care for her own personal hygiene. (R. 14). In regards to social functioning, the ALJ found that the Plaintiff only has moderate difficulties. (R. 14). The ALJ noted that the Plaintiff testified that she gets along with immediate family, but would have difficulty getting along with others. (R. 14). Concerning concentration, persistence or pace, the ALJ found that the Plaintiff has moderate difficulties. (R. 14). The ALJ noted that the Plaintiff is able to perform simple routine tasks, but has problems in high stress situations. (R. 14). The ALJ also gave her the benefit of the doubt that some of her medications may cause side-effects that would affect her functional ability. (R. 14).

Regarding episodes of decompensation, the ALJ found that the Plaintiff has experienced no episodes of decompensation. (R. 14). She noted that the Plaintiff had never been hospitalized for her mental conditions and is not involved in treatment or counseling. (R. 14). Thus, the ALJ did not find that the Plaintiff's mental impairments caused at least two "marked" limitations or one "marked" limitations and "repeated' episode of decompensation. (R. 14). The ALJ discussed the medical evidence in detail and noted that the Plaintiff treated with Dr. Garby in 2006, who noted improvement in the Plaintiff's mood and symptoms. (R. 17, 245-47). The ALJ also noted that Dr. Goykovich indicated that the Plaintiff's medications were working well. (R. 17, 198). Further, the ALJ noted that the medical notes from her counseling sessions at Community Services indicated that the Plaintiff was seen two times in August 2006 and that she reported only having 1 panic attack between visits. (R. 17, 193-95).

We must stress that it is the claimant's burden to prove that her condition meets or equals the specific clinical requirements of a listed impairment such as Listing 12.04 or 12.06 before she can be considered to be disabled *per se* without consideration of vocational factors, such as age, education, and work experience. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citations omitted). To be entitled to disability benefits, a claimant must show that all, not just some, of the criteria for a listing are met. *Zebley*, 493 U.S. at 530. The Commissioner must make the legal determination as to whether an impairment meets or equals a listing. *See* 20 C.F.R. § 404.1527(e)(1) and (2).

The Plaintiff has failed to set forth evidence to establish that her mental impairments meet Listings 12.04 or 12.06. Accordingly, we find that substantial evidence supports the ALJ's finding that the Plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

### B. Whether the ALJ erred in forming the hypothetical question to the VE by failing to consider the effects of the Plaintiff's migraine headaches on her ability to work.

The Plaintiff argues that the hypothetical question the ALJ posed to the VE did not accurately represent all of her limitations. (Doc. 9 at 8). The Plaintiff contends that the ALJ was inaccurate when he failed to take into account her migraine headaches. (*Id.*). The Defendant counters that the ALJ's hypothetical questions included all of the Plaintiff's limitations that were supported by the record. (Doc. 12 at 15-16).

The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d

Cir. 1987). In *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." (citations omitted).

The ALJ asked the VE the following:

> Now, assume, if you will, we are dealing with an individual the same age, same education, and same past work experience as the Claimant. Assume further that this individual retains the capacity to work at any exertional level. However, there are nonexertional limitations. The individual in question would be limited to simple, routine tasks, low stress as defined as no decision-making required and no changes in the work setting. And there should be no interaction with the public. Could such an individual perform any of the past relevant work of the Claimant?. . . Could such an individual perform any other work in the regional or national economy?

(R. 45). The VE was present throughout the entire hearing and heard all testimony from the Plaintiff regarding her impairments. (R. 23-49). The VE testified that such an individual could not perform the past relevant work of the Plaintiff, but could perform the jobs of dishwasher, cleaner, such as an office cleaner, hand packager, and laundry worker. (R. 45). The ALJ then asked what jobs the Plaintiff could perform if he added the restriction of "occasional interaction with coworkers". (R. 46). The VE answered that the hypothetical individual would be able to perform the jobs previously mentioned and with no erosion in the number of jobs. (R. 46). The ALJ further limited the hypothetical by asking the VE to consider the same hypothetical, with the added restriction of "no interaction with coworkers, and/or the individual may be expected to be off task 40 percent of the time, and/or the individual in question may be expected to be absent in excess of three times per month." (R. 47). The ALJ responded that the hypothetical individual could not perform any work in the regional or national economy. (R. 46-47).

The record reflects that the ALJ's hypothetical question included all of the Plaintiff's limitations as supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). As the Defendant points out, the ALJ properly included the Plaintiff's migraine headaches in the hypothetical question to the VE by altering the hypothetical question to include more than 3 absences a month. (Doc. 16 at 16 & R. 47). The ALJ rejected the VE's

8

answer to this portion of the hypothetical in his final decision because the ALJ determined that the Plaintiff's migraines were not a severe impairment and found the Plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms to be partially credible. (R. 13-14, 15-16).

As discussed earlier, the ALJ determined that the Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with nonexertional limitations. (R. 15). The ALJ found that the Plaintiff was limited to performing simple routine tasks, to working in a low stress environment as defined as "no decision making" and "no changes in work setting", and to interacting with co-workers occasionally, and never with the public. (R. 15). The ALJ did not find the Plaintiff's migraine headaches to be a severe impairment. (R. 13-14).

At the hearing, the Plaintiff testified that she suffers from migraine headaches that she gets 2 to 3 times per month. (R. 40). She testified that they can last two to three days and cause light sensitivity, nausea, and excruciating pain. (R. 40). Before 2006, the Plaintiff used to treat her headaches by going to the emergency room for a shot. (R. 41). In 2006, her doctor proscribed her Toradol to treat her migraines and she had not been to the emergency room for a migraine for the year preceding the hearing. (R. 41). The Plaintiff further testified that if she "can catch her migraine" before it gets worse, and take her pills, that "the pills just keep it more of a headache." (R. 41). The Plaintiff's testimony regarding her migraine headaches supports the ALJ's determination that her migraines are not severe impairments and shows that they have been controlled with medication.

When an ALJ's hypothetical question to a VE sets forth the Plaintiff's limitations, as supported by the record, the VE's response may be accepted as substantial evidence in support of the ALJ's determination that the Plaintiff is not disabled. *Chrupcala,* 829 F.2d at 1276. Therefore, the VE's response to the questions identifying the jobs that the Plaintiff could perform constitutes substantial evidence in support of the ALJ's determination that the Plaintiff was not disabled under the Act.

### C. Whether the ALJ erred in failing to consider the Plaintiff's history of unsuccessful work attempts in determining if she has the ability to work.

The Plaintiff argues that the ALJ erred by failing to discuss and consider the numerous unsuccessful work attempts by the Plaintiff in the past ten years. (Doc. 9 at 9). The Defendant argues that, contrary to the Plaintiff's assertions, the ALJ did consider the Plaintiff's work history in his decision. (Doc. 12 at 17).

In the decision, the ALJ mentions the Plaintiff's past relevant work and the fact that the Plaintiff amended her disability onset date from July 1, 1997, to November 9, 2005, because the Plaintiff engaged in substantial gainful activity within that period. (R. 13, 18). The Plaintiff appears to argue that her multiple failed attempts at work prove that she is disabled. (Doc. 9 at 9-10). The Defendant argues that the Act "defines disability in terms of the effect a physical or mental impairment has on a claimant's ability to function in the workplace" and that "to be entitled to DIB, [the] Plaintiff bore the burden of proving not only that she had a medically determinable impairment, but that it is so severe that it prevented her from engaging in any substantial gainful activity that existed in the national economy." (Doc. 12 at 17)(citing *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) and *Barnhart v. Walton*, 535 U.S. 212, 220-21 (2002)). We agree with the Defendant, and, upon review of the decision, we find that the ALJ did discuss and consider the Plaintiff's past work attempts.

## VI. RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that the Plaintiff's appeal be **DENIED**.

                                                            s/ Thomas M. Blewitt
                                                            **THOMAS M. BLEWITT**
                                                            **United States Magistrate Judge**

**Dated: June 24, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL L. PARKS, | CIVIL ACTION NO. **1:CV-08-1251** |
| Plaintiff | (Judge Caldwell) |
| v. | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 24, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                          **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: June 24, 2009**